OPINION
{¶ 1} Marvin Hardin appeals from his conviction in the Montgomery County Court of Common Pleas for possession of cocaine in an amount greater than one gram but less than five grams in violation of R.C. 2925.11(A) pursuant to his no contest plea.
 {¶ 2} On September 11, 2004, Deputy John Campbell of the Montgomery County Sheriff's Office was on routine patrol in a marked sheriff's cruiser when he observed what he described as two black male subjects, one of whom was Defendant Hardin, in an automobile in the parking lot of the Air City Drive-Thru in Harrison Township, Montgomery County, Ohio. A third white male was outside the car on a ten speed bicycle, leaning in the window of the automobile. This caught the officer's attention as he was familiar with drug buys occurring in this manner and knew the area to be of high drug, prostitution and firearm activity, having made several arrests for the same in the area. Campbell also noticed at that time that the three subjects noticed him, and while he pulled into the parking lot, they each went into the liquor store while looking back at him. Campbell noticed that the vehicle they exited bore out-of-county plates with a handicap indication, and he accessed his on-board computer to check ownership, learning that a 73-year old woman was its registered owner. Campbell then called this information in, checking if it had been reported stolen.
 {¶ 3} Shortly thereafter, all three subjects emerged from the store, and Hardin picked up the bicycle and began walking it with the other black male south toward the intersection of Embury Park and Keowee. Campbell approached the vehicle and saw the men had left the keys inside the car. He removed the ignition key and locked the car door to secure the car. Campbell then called for another crew, having learned that the vehicle had been reported stolen to Dayton Police by a young female subject, and then confronted the white male subject, frisking him for weapons.
 {¶ 4} Responding to Campbell's call and description of the two black males pushing a bicycle, Deputy Harvey stopped Hardin and his acquaintance a short distance from the store where the described vehicle was located, indicating to them that they matched the description of those who had walked away from this vehicle which was reported stolen. Harvey then asked them if they would go with him back to the vehicle, indicating that he would drive them back if it turned out that they were not the individuals sought. The two individuals agreed. Though they had not been arrested, the individuals were patted down for weapons, seated in the rear of the cruiser, and taken with the bicycle back to the site of the vehicle, where they were not free to leave until the conclusion of the investigation.
 {¶ 5} In the meantime, Campbell's dispatch had contacted the owner of the vehicle, confirmed that her granddaughter had it and that she had given no one else permission to use it. Subsequently, other Dayton police officers arrived at the scene and indicated that the granddaughter had tried to report the vehicle stolen earlier. They did not take the report, because they believed the vehicle was loaned out in exchange for drugs, but did put out a locator dispatch on the vehicle.
 {¶ 6} While this information was being exchanged, between ten to fifteen minutes had passed since Hardin was picked up and returned to the scene. During this exchange of information, it was learned from Dayton Police that Hardin liked to hide drugs in his shoes. The deputies determined that they had no intention of arresting Hardin for any violation in relation to the possible stolen vehicle. However, the deputies were still concerned that Hardin may have been involved in criminal drug activity, and he was subsequently asked if he would mind taking off his shoes. At the time, Hardin was seated in the rear of a cruiser, the back door of the cruiser was open, and Hardin had both feet out of the door. Hardin's response to this request was to immediately kick both shoes off, and when he did, crack cocaine came from one of his shoes. He was thereafter arrested and given Miranda warnings and questioned.
 {¶ 7} Hardin filed a motion to suppress the evidence seized. An evidentiary hearing for the suppression motion was conducted. The trial court overruled Hardin's motion. Hardin subsequently changed his plea from not guilty to no contest, was found guilty, and sentenced to serve fourteen months in prison along with a driver's license suspension.
 FIRST ASSIGNMENT OF ERROR {¶ 8} THE TRIAL COURT ERRED BY ALLOWING EVIDENCE OF THE SEARCH AS BEING IN VIOLATION OF THE FOURTH AMENDMENT AND TERRY V. OHIO.
 {¶ 9} The Defendant argues that his detention, after the deputies' suspicion of his involvement with the possible stolen vehicle was dispelled, was an unreasonable search and intrusive Terry stop in violation of the Fourth Amendment. The state argues that the deputies acted with reasonable and articulable suspicion in stopping Defendant, resulting in his voluntary consent to the search of his shoes. We agree.
 {¶ 10} When considering a motion to suppress, the trial court assumes the role of the trier of facts and, as such, is in the best position to resolve conflicts in the evidence and determine the credibility of the witnesses and the weight to be given to their testimony. State v. Retherford (1994),93 Ohio App.3d 586, 639 N.E.2d 498. The court of appeals must accept the trial court's findings of fact if they are supported by competent evidence in the record. Id. Accepting those facts as true, the appellate court must then independently determine, as a matter of law and without deference to the trial court's legal conclusion, whether the trial court erred in applying the substantive law to the facts of the case. Id.
 {¶ 11} The guarantees contained in the Fourth Amendment apply to persons, not places, and are equally applicable to individuals on the streets as well as in their homes. Terry v. Ohio (1968), 392 U.S. 1, 9. Once a police officer has restrained a person's liberty by either physical force or a show of authority the guarantees of the Fourth Amendment are implicated. United Statesv. Mendenhall (1979), 446 U.S. 544, 552.
 {¶ 12} "Although police must generally secure a warrant to engage in a search and make a seizure, that procedure cannot be followed where circumstances merit swift action based upon the `on-the-spot' observations of an officer on the street." Terry
at 20. "A law enforcement officer may make a brief investigatory stop if the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." Statev. Freeman (1980), 64 Ohio St.2d 291.
 {¶ 13} Additionally, the United States Supreme Court held that where the public interest in law enforcement warrants a detention on less than probable cause, the stop must be temporary and the investigative methods must employ the least intrusive means available. See Florida v. Royer (1983), 460 U.S. 491,500. The suppression of illegal drug trafficking is such a public interest. Id. at 498-499.
 {¶ 14} "The question of whether consent is voluntarily given, unlike the inquiry into whether a police encounter constitutes a seizure, however, is a pure question of fact, requiring the trier of fact to determine what the defendant subjectively believed."State v. Robinette (1997), 80 Ohio St.3d 234, 248. "At a suppression hearing, the evaluation of evidence and credibility of witnesses are issues for the trier of fact." State v. Mills
(1992), 62 Ohio St.3d 357. "In cases such as this, where there are two reasonable views of the evidence, an appellate court is not free to choose the view that it prefers. Instead, the appellate court must yield to the trier of fact, who `is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" Robinette at 249 quoting Seasons Coal Co. Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80.
 {¶ 15} The Defendant's initial stop and continued detention was justified. Defendant was seen in the driver's seat of the motor vehicle, which bore handicapped plates and was registered to a 71-year old white female, and Defendant appeared to have no handicap. The deputy observed suspicious behavior consistent with a hand to hand drug transaction: a male on a bicycle leaning into the passenger side window of the vehicle. Defendant was observed exiting and walking away from the vehicle, while looking at the approaching officer suspiciously, then entering a store. Upon leaving the store, Defendant did not get back in the vehicle, but instead took the bicycle on which the white male had earlier approached the vehicle and began walking it away from the store and the vehicle in which he'd been seated in the driver's seat. The vehicle in which Defendant had been seated was reported to have been either stolen or used without authority of the owner.
 {¶ 16} Viewed in their totality, these are specific and articulable facts that would lead an officer of reasonable caution to suspect that the vehicle had been stolen, that Defendant was involved in that theft, and that additional criminal activity was afoot. Thus, the officers acted lawfully in stopping and detaining the Defendant to further investigate the possibility that he might have been involved in the theft of the vehicle.
 {¶ 17} Additionally, during the deputy's investigation in connection with the Defendant's association with the vehicle, it was learned that the vehicle may have been loaned out in exchange for drugs, and that the Defendant was known to carry drugs in his shoes. It was reasonable for the deputies to detain Hardin further to dispel their suspicions that Hardin was just involved in a drug transaction. Deputy Harvey acted reasonably in asking Hardin if he would remove his shoes to further dispel his suspicions.
 {¶ 18} Justice Cook writing a concurring opinion in State v.Robinette (1997), 80 Ohio St.3d 234, wrote as follows:
 {¶ 19} "[A]nalysis of Officer Newsome's inquiry during the extended detention, as part of a drug interdiction policy, would pose an interesting legal question. As noted by the majority, suppression of illegal drug trafficking weighs heavily in the public interest. Additionally, that Officer Newsome's questioning followed a valid initial stop and was limited to two brief questions minimized the seizure's interference with individual liberty. Had the state advanced Officer Newsome's extended detention of Robinette as a reasonable seizure under the Fourth Amendment pursuant to the drug interdiction policy, rather than arguing that there was no seizure at all, it might have been able to demonstrate that there was not a period of illegal detention and thus no Fourth Amendment violation."
 {¶ 20} A court reviewing the legality of a consent search need only determine whether the abandonment of Fourth Amendment rights and the consent to search was an act of free will, voluntarily given, and not the result of duress or coercion, express or implied. Ohio Arrest, Search and Seizure, Lewis Katz, 2005 Edition. Also see Schneckloth v. Bustamonte, 412 U.S. 218
(1973).
 {¶ 21} Hardin was not under arrest when he gave his consent. Although several officers were on the scene, none had drawn their weapons. Deputy Harvey did not claim authority to search Hardin, but merely asked him if he would remove his shoes. Hardin complied immediately. Under all the circumstances, we find no reason to disturb the trial court's factual finding that Hardin consented to the search of his shoes. The first assignment of error is Overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 22} THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT TO PRISON WITHOUT FIRST CONSIDERING IMPOSITION OF EITHER A FINE OR A COMMUNITY CONTROL SANCTION AS THE SOLE SANCTION IN ACCORDANCE WITH O.R.C. § 2929.13(A).
 {¶ 23} The Defendant argues that the court did not adequately consider on the record community control sanctions as the sole punishment. The State argues that adequate consideration was taken. We agree.
 {¶ 24} R.C. 2929.13(A) states that if an offender is eligible for community control sanctions, the court shall consider the appropriateness of imposing a community control sanction or fine as the sole punishment.
 {¶ 25} The record reveals that the trial court did in fact comply with R.C. 2929.13(A). At the sentencing hearing, the trial court stated on the record that it had reviewed the pre-sentence investigation report. The court noted that the Defendant has an "extensive criminal history" and has previously "failed" when the trial court imposed community control and intervention programs. Additionally, the court noted that the Defendant had previously served a prison term. Ultimately, due to the aforementioned reasons, while finding that the prison term was consistent with the principles and purposes of sentencing, the trial court decided that the Defendant was not amenable to community control sanctions.
 {¶ 26} Defendant's second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR {¶ 27} THE TRIAL COURT ERRED IN CONVICTING AND SENTENCING DEFENDANT FOR COCAINE POSSESSION BASED ON INSUFFICIENT EVIDENCE AS A MATTER OF LAW.
 FOURTH ASSIGNMENT OF ERROR {¶ 28} DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 29} When an indictment, information, or complaint contains sufficient allegations to state a felony offense and the defendant pleads no-contest, the court must find the defendant guilty of the charged offense. State v. Bird (1998),81 Ohio St.3d 582, 584. Therefore, a defendant who pleads no-contest to a charge may not later attack the sufficiency or weight of the evidence under which he was convicted. See State v. Hodge (Feb. 20, 2002), Lorain App. No. 01CA007913, 2002-Ohio-752; State v.Strickland (June 22, 1987), Warren App. No. CA 86-08-053.
 {¶ 30} Defendant's no-contest plea precludes him from challenging the sufficiency or the weight of the evidence used to support his conviction. These issues are only preserved by proceeding to trial.
 {¶ 31} Defendant's Third and Fourth assignments of error are overruled.
 {¶ 32} The Judgment of the trial court will be Affirmed.
Fain, J., and Donovan, J., concur.