[Cite as *State v. Carothers*, 2015-Ohio-4569.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P. J.<br>Hon. Sheila G. Farmer, J. |
|     Plaintiff-Appellant | Hon. John W. Wise, J. |
| -vs- | Case No. 2015 AP 04 0017 |
| JASON C. CAROTHERS | |
|     Defendant-Appellee | O P I N I O N |


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Court of Common Pleas, Case No. 2014 CR 09 0189 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | November 3, 2015 |


APPEARANCES:

| | |
|---|---|
| For Plaintiff-Appellant | For Defendant-Appellee |
| MCIHAEL J. ERNEST<br>ASSISTANT PROSECUTOR<br>125 East High Avenue<br>New Philadelphia, Ohio  44663 | TRAVIS COLLINS<br>105 Jamison Avenue<br>Post Office Box 271<br>Cadiz, Ohio  43907 |

*Wise, J.*

{¶1}   Appellant, the State of Ohio, appeals a judgment of the Tuscarawas County Common Pleas Court granting Appellee Jason C. Carothers' motion to suppress.

STATEMENT OF THE FACTS AND CASE

{¶2}   On August 8, 2013, Appellee Jason C. Carothers was a passenger in a vehicle operated in the City of New Philadelphia. The vehicle traveled over a double yellow line and was stopped by Officer James Miller of the New Philadelphia Police Department.   (T. at 8-9). The stop occurred on the ramp to U.S. 250. (T. at 8) According to Officer Miller, he approached the vehicle and observed that the driver, Jessica Deemer, appeared nervous and that her pupils were dilated. (T. at 8-9). After obtaining the necessary personal identification information, Officer Miller went back to his vehicle to prepare a traffic citation that was to be issued to Ms. Deemer, along with checking for any outstanding warrants. (T. at 9).

{¶3}   While Officer Miller was completing the traffic ticket, Sgt. Eddie Jones of the Tuscarawas County Sheriff's Department arrived at the traffic stop. (T. at 9). Soon thereafter, New Philadelphia Police Officer, Mitch Gobely, also arrived at the traffic stop. (T. at 9). According to Officer Gobely, he approached the vehicle for the purpose of seeking consent to search it. (T. at 37).

{¶4}   Officer Gobely stated that prior to approaching the vehicle, he spoke with Officer Miller and was advised by him that the operator of the vehicle appeared to have indicators that she had been using narcotics. (T. at 8-9). According to Officer Gobely, he asked Ms. Deemer for consent to search her vehicle. (T. at 8-9). Officer Gobely

stated that Ms. Deemer appeared "a little bit hesitant" and responded that "it's not my vehicle. I'm not sure if I can do that." (T. at 9). Officer Gobely went on to state that Ms. Deemer looked to Appellee, her passenger, seemingly for advice. (T. at 36). According to Officer Gobely, Appellee stated "there is nothing in here. You can go ahead and search it." (T. at 9). According to Gobely, Ms. Deemer then looked at him and said "yeah, that's fine" and consented to a search of the vehicle. (T. at 36). Officer Gobely then had Ms. Deemer exit the vehicle, where she was further questioned outside of the vehicle. (T. at 36-37).

{¶5} Officer Gobely then went to the passenger side of the vehicle and requested that Appellee also exit the vehicle. (T. at 37). According to Officer Gobely, he instructed Appellee to exit his vehicle and put his hands on the car. (T. at 37). Officer Gobely stated that he was going to pat him down for weapons and, as he was doing so, asked Appellee if there was anything in his pockets he needed to know about. (T. at 37). Officer Gobely stated that Appellee advised he did not have any weapons or anything else on him. (T. at 37). Officer Gobely then asked Appellee for consent to go through his pockets in order to make sure. (T. at 37). Officer Gobely testified that Appellee advised that "yes, that's fine." Officer Gobely then went through Appellee's pockets during which he did not discover any contraband.

{¶6} Officer Gobely stated he then began to pat down Appellee's leg and when he got to his shoes Officer Gobely requested that Appellee remove his shoes in order to check them. (T. at 37). Officer Gobely stated that Appellee removed his left shoe and in doing so shook his foot as he pulled his foot out of the shoe. (T. at 37). Officer Gobely stated that once the shoe was removed, he found the different types of

narcotics in the bottom of the shoe. (T. at 37). Officer Gobely reiterated that he asked Appellee to please remove his shoes one at a time, to which he complied. According to Officer Gobely, shortly after asking Appellee to remove his shoe, he became concerned that Appellee was attempting to conceal something. Officer Gobely stated that Appellee removed his left shoe differently than he did his right, as if he was trying to move something towards the front of the shoe.

{¶7} Appellee was indicted by the Tuscarawas County Grand Jury with one count of Possession of Cocaine, in violation of R.C. §2925.11(A) and one count of Possession of Heroin, in violation of R.C. §2925.11(A).

{¶8} On February 3, 2014, Appellee filed a motion to suppress on the basis that Hendrix lacked a reasonable and articulable suspicion of criminal activity to continue to detain him after the initial traffic stop. Appellee also challenged the search of his vehicle arguing lack of consent.

{¶9} The trial court held an evidentiary hearing on March 14, 2014. Following this hearing, the court granted the motion to suppress, finding:

> "Agents of the State of Ohio, on the date in question, conducted an illegal, unconstitutional search of the person of the Defendant without a warrant and that the circumstances surrounding the search of the Defendant on the date in question did not implicate the right of the State to engage in a warrantless search of the person of the Defendant. More specifically, the suggestion by Agents of the State of Ohio that the Defendant gave permission or consented to the search of his person for contraband, as opposed to a pat down search of the Defendant for weapons, flies in the face of the evidence. The Defendant was ordered to remove his shoe by one New Philadelphia, Ohio Police Officer and requested by the other to take off his shoe where the drugs in question were found. At no time did the Defendant give consent to the removal of his shoe and the circumstances established in the evidence can in no way suggest that it did." (Judgment Entry, April 23, 2015).

{¶10} The state now appeals, assigns the following errors for review:

## ASSIGNMENTS OF ERROR

**{¶11}** "I. THE TRIAL COURT COMMITTED REVERSIABLE [SIC] ERROR IN CONCLUDING THAT THE APPELLANT DID NOT CONSENT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY TO A SEARCH OF HIS PERSON.

**{¶12}** "II. THE TRIAL COURT COMMITTED REVERSIABLE [SIC] ERROR IN CONCLUDING THAT THE SEARCH OF THE APPELLEE WAS UNCONSTITUTIONAL AS THE CONTRABAND FOUND ON THE APPELLEE WAS THE SUBJECT OF INEVITABLE DISCOVERY."

### *State's Right to Appeal*

**{¶13}** A court of appeals has jurisdiction to entertain the state's appeal from a trial court's decision to suppress evidence only where the state has complied with Crim.R. 12(K). *State v. Perez,* 1st Dist. Hamilton Nos. C–040363, C–040364, C–040365, 2005–Ohio–1326, ¶ 12, *citing State v. Buckingham,* 62 Ohio St.2d 14, 402 N.E.2d 536(1980), syllabus (interpreting former Crim.R. 12(J)).

**{¶14}** Crim.R. 12(K) states in pertinent part:

> When the state takes an appeal as provided by law from an order suppressing or excluding evidence, the prosecuting attorney shall certify that both of the following apply:
>
> (1) the appeal is not taken for the purpose of delay;
>
> (2) the ruling on the motion or motions has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed.
>
> The appeal from an order suppressing or excluding evidence shall not be allowed unless the notice of appeal and the certification by the prosecuting attorney are filed with the clerk of the trial court within seven days after the date of the entry of the judgment or order granting the motion. * * *.

**{¶15}** Our review of the record reveals a certifying statement by the prosecutor as outlined in Crim.R. 12(K) was filed on April 21, 2015. We therefore have jurisdiction to proceed to the merits of this appeal.

I.

**{¶16}** In its First Assignment of Error, the State of Ohio contends the trial court erroneously granted Appellee's motion to suppress. We disagree.

**{¶17}** The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *See Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271.

**{¶18}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this third type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. *See State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583; *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141; *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N .E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N .E.2d 726.

{¶19} Here, Appellant State of Ohio contends the trial court incorrectly decided the ultimate or final issue raised in the Motion to Suppress.

{¶20} The United States Supreme Court has held that "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." *Ornelas v. U.S.* (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911.

{¶21} Initially, we find the Ohio Supreme Court has emphasized that probable cause is not required to make a traffic stop; rather the standard is reasonable and articulable suspicion. *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4358, 894 N.E.2d 1204, ¶ 23. Further, neither the United States Supreme Court nor the Ohio Supreme Court considered the severity of the offense as a factor in determining whether the law enforcement official had a reasonable, articulable suspicion to stop a motorist.

{¶22} Officer Miller stopped the vehicle in which Appellee was a passenger for travelling over the double yellow line. Neither the driver, Jessica Deemer, nor Appellee challenged the initial stop of the vehicle.

{¶23} In the instant case, Appellee Carothers argued in his suppression motion that he first thought the officers were not justified in detaining him beyond the normal time for the traffic stop and second that he never consented to a search of his shoes and that he only removed same pursuant to a police order. The trial court agreed and sustained Appellee's motion.

{¶24} The State of Ohio argues that the trial court erred in finding that Appellee did not consent to the search of his person for contraband.

**{¶25}** Consent to search is well-established exception to the warrant requirement. No Fourth Amendment violation occurs when an individual voluntarily consents to a search. *United States v. Drayton,* 536 U.S. 194, 207, 122 S.Ct. 2105. The proper test is whether the totality of the circumstances demonstrates the consent was voluntary. *State v. Robinette,* 80 Ohio St.3d 234, 1997–Ohio–343.

**{¶26}** In *Robinette,* the Ohio Supreme Court held:

We find *Bustamonte* instructive in defining when permission to search is truly consensual under the totality of the circumstances:

"[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Id.,* 412 U.S. at 248–249, 93 S.Ct. at 2059, 36 L.Ed.2d at 875. *State v. Robinette,* 1997–Ohio–343, 80 Ohio St.3d 234, 242–43, 685 N.E.2d 762, 769

**{¶27}** One well-established exception to the warrant requirement is the consent search. No Fourth Amendment violation occurs when an individual voluntarily consents to a search. See *United States v. Drayton,* 536 U.S. 194, 207, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002) (stating that "[p]olice officers act in full accord with the law when they ask citizens for consent"); *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) ("[A] search conducted pursuant to a valid consent is constitutionally permissible"); *State v. Comen,* 50 Ohio St.3d 206, 211, 553 N.E.2d 640 (1990). In *Schneckloth,* the United States Supreme Court acknowledged the importance of consent searches in police investigations, noting that "a valid consent may be the only means of obtaining important and reliable evidence" to apprehend a

criminal. *Id.* at 227–228, 93 S.Ct. 2041. *See, also, State v. Fry,* 4th Dist. No. 03CA26, 2004–Ohio–5747, 2004 WL 2428439, ¶ 18. *State v. Camp*, 2014-Ohio-329, 24 N.E.3d 601, 607, ¶ 24 (5th Dist.)

**{¶28}** The burden of proving that the suspect voluntarily consented to the search rests upon the prosecution. *Schneckloth, supra; Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *State v. Hassey,* 9 Ohio App.3d 231, 459 N.E.2d 573 (10th Dist.1983); *State v. Pi Kappa Alpha Fraternity,* 23 Ohio St.3d 141, 491 N.E.2d 1129 (1986). The state's burden is not satisfied by showing a mere submission to a claim of lawful authority. *Robinette,* 80 Ohio St.3d at 243, 685 N.E.2d at 770.

**{¶29}** The United States Supreme Court further noted, "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *I.N.S. v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); *Drayton, supra,* 536 U.S. at 205, 122 S.Ct. at 2113. Moreover, a voluntary consent need not amount to a waiver; consent can be voluntary without being an "intentional relinquishment or abandonment of a known right or privilege." *Schneckloth v. Bustamonte,* 412 U.S. 218, 235, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), (*quoting Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)); *State v. Barnes,* 25 Ohio St.3d 203, 495 N.E.2d 922 (1986); *State v. McConnell,* 5th Dist. Stark No. 2002CA00048, 2002–Ohio–5300, 2002 WL 31270071, ¶ 8. Rather, the proper test is whether the totality of the circumstances demonstrates that the consent was voluntary. *Id.* Further, "[v]oluntary consent, determined under the totality of the

circumstances, may validate an otherwise illegal detention and search." *State v. Robinette,* 80 Ohio St.3d 234, 241, 685 N.E.2d 762 (1997), *citing Davis v. United States,* 328 U.S. 582, 593–594, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946).

**{¶30}** "Whether a consent to search was voluntary or was the product of duress or coercion, either express or implied, is a question of fact to be determined from the totality of the circumstances." *State v. Lett,* 11th Dist. No. 2008-T-0116, 2009-Ohio-2796, ¶ 32, citing *Schneckloth* at 248–249 and *State v. Chapman,* 97 Ohio App.3d 687, 691, 647 N.E.2d 504 (1st Dist.1994). Thus, this is a determination best left to the trier of fact, i.e. the court, and will not be reversed unless it is not supported by competent credible evidence.

**{¶31}** The following testimony of Officer Miller was presented on cross-examination at the suppression hearing:

Q: So it would be your position that Mr. Carothers consented to a search of his shoes?

A: Initially Mr. Carothers and Ms. Deemer I believe consented to the search of their person, yes.

Q: Did you hear on the video when - was it you that told Mr. Carothers "Now you have to take your shoes off'?

A: That was probably me, yeah.

Q: So, Mr. Carothers had - essentially was indicating he was unwilling to take his shoes off, is that correct?

A: I don't think he actually said anything or verbalized anything. I think he was kind of - I guess he seemed reluctant to take his shoes off. I don't think he actually indicated that he did not wish to take his shoes off or he did not want to be searched or say anything along those lines.

Q: But you ordered Mr. Carothers to take his shoes off, correct?

A: I said "Now you have to take your shoes off," and then he took his shoes off.

Q: You would construe that as an order, correct?

A: I guess you can construe it as an order, yeah. (Tr. page 20-21).

**{¶32}** Additionally, Officer Miller testified that after the initial stop, at least one officer was watching Appellee Carothers at all times, and no one had observed him place anything into Ms. Deemer's purse. He stated that he did not believe he had probable cause to arrest Appellee Carothers once he found the syringe in Jessica Deemer's purse, but he did believe he had probable cause to search him. He further stated that Appellee Carothers was not under arrest during the search of his shoes. (T. at 28-29).

**{¶33}** Pursuant to the above testimony, the trial court found that Appellee removed his shoe in response to an order from the police, and that he did not give consent to the removal or search of his shoes.

**{¶34}** Given these facts, the trial court's conclusion that the consent was not voluntary is supported by competent credible evidence.

**{¶35}** Therefore, since the determination of whether consent to search Appellee's person was voluntary is a question of fact to be determined from the totality of the circumstances, and the trial court had competent credible evidence to support the conclusion that such consent was not voluntarily given, we defer to that decision. *Lett,* 2009–Ohio–2796, ¶ 32 (consent is a question of fact).

**{¶36}** The trial court did not abuse its discretion in finding that consent was not voluntary.

**{¶37}** The State of Ohio's First Assignment of Error is overruled.

II.

**{¶38}** In its Second Assignment of Error, the State further argues that the seized contraband in this case was the subject of inevitable discovery. We disagree.

**{¶39}** In 1985, the Supreme Court of Ohio adopted the inevitable discovery exception to the exclusionary rule. *State v. Perkins,* 18 Ohio St.3d 193, 480 N.E.2d 763 (1985). The Supreme Court held:

**{¶40}** "That illegally obtained evidence is properly admitted in a trial court proceeding once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation. The prosecution will have the burden to show within a reasonable probability that police officials would have discovered the derivative evidence apart from the unlawful conduct. 18 Ohio St.3d at 196, 480 N.E.2d 763; *See, also*, *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

**{¶41}** In the case at bar, we do not find that the officers inevitably would have discovered the drugs in Appellee's shoe.

**{¶42}** The State argues that once the officers found the syringe in the driver Jessica Deemer's purse, which was located in the vehicle, probable cause existed to search the entire vehicle and its passengers.

**{¶43}** This Court in *State v. Deemer*, 5th Dist. Tuscarawas App. No. 2015 AP 01 0006, 2015-Ohio-3199, decided August 7, 2015, upheld the trial court's suppression of the seized evidence based on its determination that consent to search was not freely given by Ms. Deemer.

{¶44} Because illegally obtained evidence cannot be the basis for a probable cause determination, we find this argument not well-taken.

{¶45} Appellant's Second Assignment of Error is overruled.

{¶46} For the foregoing reasons, the judgment of the Court of Common Pleas, Tuscarawas County, Ohio is affirmed.

By: Wise, J.

Hoffman, P. J., and

Farmer, J., concur.

JWW/d 1020