[Cite as *State v. Murray*, 2017-Ohio-9332.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | CASE NO. 2017-L-025 |
| CHAD A. MURRAY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2016 CR 000549.

Judgment: Affirmed and remanded.

*Charles E. Coulson,* Lake County Prosecutor, and *Karen A. Sheppert,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Charles R. Grieshammer,* Lake County Public Defender, and *Vanessa R. Clapp,* Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant, Chad A. Murray, appeals the judgment of the Lake County Court of Common Pleas denying his motion to suppress evidence. At issue is whether the trial court erred in finding appellant's consent to search his shoes was voluntary and in denying his motion to suppress. For the reasons that follow, we affirm and remand.

{¶2} On July 8, 2016, appellant was indicted for possession of heroin, a felony of the fourth degree with a forfeiture specification – contraband (heroin). Appellant pled not guilty. Subsequently, he filed a motion to suppress evidence, and the trial court held a suppression hearing.

{¶3} The evidence revealed that on May 20, 2016, at about 10:00 a.m., Mentor Police Officer Bryan Distelrath was patrolling traffic on Emerald Court in Mentor when he saw a Pontiac Grand Prix fail to signal his turn at a stop sign before entering the Sam's Club Gas Station.

{¶4} Officer Distelrath activated his overhead lights and siren. The driver of the Grand Prix drove into the gas station and stopped near the gas pumps. The officer exited his cruiser and approached the vehicle on the driver's side. There were four occupants in the Pontiac. None of them had a driver's license or identification card, but they all provided their names and other identifying information. The driver was Michael Murray. His girlfriend, Cortinei Andrews, was in the front passenger seat. The driver's brother, appellant, was seated in the back passenger seat on the driver's side. Brandy Simmons was in the back passenger seat next to appellant.

{¶5} While Officer Distelrath was standing at the driver's side of the vehicle talking to the occupants, he smelled the odor of alcohol coming from the vehicle and saw two open beer cans in the back seat area within appellant's reach. The officer saw that appellant was slouched down in his seat, breathing heavily, nervous, and avoided looking at the officer. Ms. Simmons appeared to be under the influence because her pupils were constricted and she looked lethargic.

2

{¶6} Officer Distelrath then left the vehicle and its occupants and returned to his cruiser to run their information through LEADS. The officer learned that the driver, Michael Murray, did not have a valid driver's license and had multiple driver's license suspensions. Appellant had no warrants for his arrest, but had a prior conviction for operating a vehicle while under the influence.

{¶7} Officer Distelrath requested a second vehicle to provide backup, and Mentor Officer Jason Myers responded. Officer Distelrath brought Officer Myers up to date, and both officers then approached the suspect vehicle. Officer Distelrath asked Michael to step outside. Officer Distelrath told him he was being arrested for driving without a valid driver's license and handcuffed him. Michael was then secured in the back seat of Officer Distelrath's cruiser.

{¶8} The officers then returned to the vehicle. Officer Distelrath asked appellant to exit the car. As he did, the officer told appellant he was not under arrest. After appellant stepped out of the car, he was still acting nervously. He was breathing heavily and his hands were trembling.

{¶9} Officer Distelrath told appellant he was going to perform a pat down search. The officer testified he conducted a pat down of appellant as he was trained to do. He had appellant put his hands behind his back and, while holding onto both of appellant's hands with one hand, the officer conducted a pat down of appellant's outer clothing with his other hand to see if he had any weapons. The frisk, which lasted less than ten seconds, did not reveal any weapons or contraband.

{¶10} Officer Distelrath then released appellant's hands and asked him where they were coming from and going. Appellant said they were from Delaware County and were in Mentor visiting a friend or relative in the hospital.

{¶11} Officer Distelrath then asked appellant if he would mind emptying his pockets real quick. Appellant said he would not mind and complied without any hesitation, showing the officers his pockets were empty.

{¶12} Officer Myers said that when appellant exited the car, he noticed his shoes were untied and loose. As a result, after appellant showed them his pockets were empty, Officer Myers asked appellant, "Could you just do me a quick favor? Do you mind, just take off your shoes real quick. Just take your shoes off for me." At that time, Officer Distelrath was standing a couple feet in front of appellant and Officer Myers was standing behind appellant a couple feet to the right of him. Neither Officer had his hands on appellant and he was still not under arrest. Appellant immediately kicked off his shoes, starting with his right shoe. The officers saw a clear plastic baggie containing a tan powdery substance, which they suspected was heroin, in his right shoe. Officer Distelrath then arrested appellant and placed him in Officer Myers' cruiser.

{¶13} Based on our review of Officer Distelrath's and Officer Myers' dash cam video, the officers were professional, polite, and courteous and their tone was conversational and calm, not loud, demanding, or threatening at any time. Further, only about 15 minutes elapsed from the time Officer Distelrath stopped the vehicle until appellant consented to the search of his shoes. And, as Officer Myers testified, appellant was cooperative with the officers and followed all their requests without hesitation.

{¶14} Appellant did not testify at the suppression hearing and thus did not dispute the officers' testimony.

{¶15} Following the presentation of the evidence, the trial court entered a five-page, highly-detailed judgment denying appellant's motion to suppress.

{¶16} On or about November 19, 2016, appellant pled no contest to possession of heroin with a forfeiture specification – contraband (heroin), as charged in the indictment. The court found appellant's plea was voluntary; accepted his plea; found him guilty; and deferred sentencing. On January 9, 2017, the court sentenced appellant to two years of community control. As sanctions and conditions, he was ordered to serve 35 days in jail, with credit for 30 days time served, and to successfully complete an intensive out-patient program. Appellant appealed the trial court's judgment denying his motion to suppress evidence. For his sole assignment of error, he alleges:

{¶17} "The trial court erred by denying the defendant-appellant's motion to suppress in violation of his due process rights and rights against unreasonable search and seizure as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and Sections 10 and 14, Article 1 of the Ohio Constitution."

{¶18} Appellant does not challenge the propriety of the initial traffic stop or the officers' requests that he identify himself, that he step out of the car, or that he empty his pockets. Instead, appellant argues the state failed in its burden to show that he voluntarily consented to a warrantless search of his person, specifically, his shoes. Appellant also argues the officers unlawfully exceeded the scope of the Terry frisk for weapons when they had him remove his shoes. However, because the state argues on appeal (as it argued below) that the search of appellant's shoes was consensual, rather

5

than part of the Terry frisk, the issue of whether the search of appellant's shoes was warranted as part of a frisk is irrelevant and moot. We therefore confine our analysis to whether the search of appellant's shoes was warranted as a consent search.

{¶19} "Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact." *State v. Lett,* 11th Dist. Trumbull No. 2008-T-0116, 2009-Ohio-2796, ¶13. "During a hearing on a motion to suppress evidence, the trial judge acts as the trier of fact and, as such, is in the best position to resolve factual questions and assess the credibility of witnesses." *Id.* "An appellate court reviewing a motion to suppress is bound to accept the trial court's findings of fact where they are supported by some competent, credible evidence." *Id.* "Accepting these facts as true, the appellate court independently reviews the trial court's legal determinations de novo." *Id.*

{¶20} In addressing the consent exception to the warrant and probable-cause requirements under the Fourth Amendment, the United States Supreme Court has held:

> {¶21} "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable [* * *] subject only to a few specifically established and well-delineated exceptions.' *Katz v. United States*, 389 U.S. 347, 357; *Coolidge v. New Hampshire*, 403 U.S. 443, 454-455; *Chambers v. Maroney*, 399 U.S. 42, 51. It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. *Davis v. United States*, 328 U.S. 582, 593-594; *Zap v. United States*, 328 U.S. 624, 630." *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973).

{¶22} "A search conducted pursuant to a valid consent is constitutionally permissible." *Bainbridge v. Kaseda*, 11th Dist. Geauga No. 2007-G-2797, 2008-Ohio-2136, ¶28. "Moreover, a voluntary consent need not amount to a waiver." *Id.*

6

"Consent can be voluntary without being an 'intentional relinquishment or abandonment of a known right or privilege.'" *Id.*, quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). The state is *not* required to show the defendant knew he had a right to refuse consent as a prerequisite to establishing a voluntary consent. *Bustamonte, supra*, at 245. "To establish the consent exception to the probable-cause and warrant requirements of the Federal and Ohio Constitutions, the state has the burden of establishing by 'clear and positive' evidence that consent was freely and voluntarily given." *Lett, supra*, at ¶32, citing *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968); *State v. Posey*, 40 Ohio St.3d 420, 427 (1988). "Whether a consent to search was voluntary or was the product of duress or coercion, either express or implied, is a question of fact to be determined from the totality of the circumstances." *Lett, supra*, citing *Schneckloth, supra*, at 248-249. Further, "[a]ppellate review of the voluntariness of consent to search is limited to a determination of whether the trial court's decision was 'clearly erroneous,' and an appellate court must accept the trial court's findings of facts and determinations regarding credibility if they are supported by competent, credible evidence." *Bainbridge, supra,* at ¶27, quoting *State v. Samples*, 11th Dist. Geauga No. 93-G-1787, 1994 WL 315710 (June 24, 1994).

{¶23} "Relevant factors for the trial court to consider in determining whether a consent was voluntary include the following: (1) the suspect's custodial status and the length of the initial detention; (2) whether the consent was given in public or at a police station; (3) the presence of threats, promises, or coercive police procedures; (4) the words and conduct of the suspect; (5) the extent and level of the suspect's cooperation with the police; (6) the suspect's awareness of his right to refuse to consent and his

7

status as a 'newcomer to the law'; and (7) the suspect's education and intelligence."

*Lett, supra*, at ¶33, citing *Schneckloth*.

{¶24} In finding that appellant voluntarily consented to the search of his shoes, the trial court made the following succinct findings:

{¶25} Applying [the *Schneckloth*] factors, the court finds [1.] defendant was detained in the car as a passenger for approximately fifteen minutes prior to [him] being asked to exit the car. The car had been stopped for a turn signal violation and the driver was arrested for driving without a valid license. The fifteen minutes was not overly long and allowed the defendant to consider his situation in view of the fact that the driver was arrested and the police were clearly interested in the other passengers. [2.] Defendant's consent was given in a non-coercive setting of a large public gas station in broad daylight on a warm spring day. Numerous other customers were coming and going. [3.] There was no evidence of any threats, promises or coercive police procedures. The officers were polite, were speaking in a level, conversational tone and were not giving orders with the exception of asking the defendant to step out of the car and asking him to put his hands behind his back for a pat down search. There was no * * * rapid fire questioning of him. The pat down search lasted no more than eight or nine seconds and no handcuffs were used. At no time did the officers touch their weapons. Neither officer was excessively close to the defendant. At the time the defendant was asked to step out of his shoes, [Officer Distelrath] was about three feet in front of defendant and [Officer Myers was] about three feet behind the defendant's right side. Again, the officers' tone of voice was conversational. [4.] – [5.] Defendant was cooperative with the officers and did not question why he had to submit to a pat down search or why the officers wanted him to empty his pockets or step out of his shoes. He quietly and promptly complied with the officers' requests. [6.] No evidence was presented concerning his awareness of his right to refuse to consent to a search. He did not have an extensive criminal history and had only one conviction for operating a vehicle while impaired, a charge that would have resulted in his arrest during the traffic stop. He was the brother of the driver who did have an extensive criminal record. [7.] No evidence was presented concerning defendant's education and intelligence. A review of the dashboard camera recordings show no obvious impairment of the defendant.

{¶26} The Second District's holding in *State v. Hardin*, 2d Dist. Montgomery No. 21177, 2006-Ohio-3745, is germane. In that case, the defendant had been stopped based on a reasonable suspicion that he was involved in the theft of a vehicle, but he was not arrested. While the defendant was seated in the back of a cruiser, one of the deputies asked him if he would remove his shoes and he immediately complied. Although several officers were on the scene, none had drawn their weapons and the officer who asked the defendant to remove his shoes did not claim authority to search him. In these circumstances, the court found no reason to disturb the trial court's finding that the defendant consented to the search of his shoes. *Id.* at ¶21.

{¶27} However, the case on which appellant relies, *State v. Carothers*, 5th Dist. Tuscarawas No. 2015AP040017, 2015-Ohio-4569, is inapposite. In *Carothers*, the appellate court affirmed the trial court's finding that the defendant's consent was not voluntary. In that case, the officer told the defendant, who was a passenger in a vehicle that had been stopped for a traffic violation, "Now you have to take your shoes off." The officer testified the defendant seemed reluctant to do so. That officer also testified, "I guess you [could] construe [that] as an order * * *."

{¶28} Immediately after Officer Myers asked appellant if he would mind taking off his shoes, the officer said, "Just take your shoes off for me." This was not a separate exchange between the officer and appellant, but, rather, part of the officer's request. While appellant argues the officer commanded, rather than asked, him to take off his shoes, based on the totality of the circumstances, the trial court found appellant's consent to search his shoes was voluntary. Based on our review of the record, including the video of the incident, there was competent, credible evidence to support

9

the trial court's finding. We therefore hold the trial court did not err in finding the search was consensual and in denying appellant's motion to suppress.

{¶29} For the reasons stated in this opinion, the assignment of error is overruled. It is the order and judgment of this court that the judgment of the Lake County Court of Common Pleas is affirmed. We must remand this matter, however, for the trial court to enter a nunc pro tunc entry reflecting that appellant did not plead guilty to possession of heroin with a specification, but, rather, pled no contest.

DIANE V. GRENDELL, J., concurs,

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

_____

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

{¶30} The issue before us is whether Murray gave officers consent to search his shoes. Both the majority and the trial court conclude that consent was freely given. However, neither undertakes the necessary objective analysis of the plain words used by the officer ordering Murray to take his shoes off.

{¶31} The state bears the burden of proving by clear and convincing evidence, upon a review of the totality of the circumstances, that the defendant's consent was "'freely and voluntarily given.'" *In re Lester,* 12th Dist. Warren No. CA2003-04-050, 2004-Ohio-1376, ¶17, quoting *Florida v. Royer* (1983), 460 U.S. 491, 497, 103 S.Ct. 1319.

10

**{¶32}** An individual's consent under the Fourth Amendment is measured by objective reasonableness, i.e, "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 257, 111 S.Ct. 1801 (1991), citing *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793 (1990). What the officer or the suspect subjectively believes is not controlling. *Id.*

**{¶33}** One cannot freely and voluntarily give consent to a search when responding to an officer's command. In *State v. Hatfield*, 4th Dist. Ross No. 98CA2426, 1999 WL 158472, *6, the Fourth District Court of Appeals rejected the state's argument that the search before it was consensual. To the contrary, the court found that the suspect was simply complying with the officer's command, not consenting to a search. *Id.; State v. Carothers,* 5th Dist. Tuscarawas No. 2015AP040017, 2015-Ohio-4569, 47 N.E.3d 483, ¶33 (holding that appellee removed his shoe in response to an order from the police and that he did not give consent to search his shoes.); *United States v. Hernandez,* 944 F.Supp. 847, 852 (D.Kan.1996) (finding the defendant did not give consent to search his trunk, but was complying with an officer's command.)

**{¶34}** In *United States v. Drayton*, 536 U.S. 194, 204, 122 S.Ct. 2105 (2002), the Supreme Court found the exchange on a bus between a passenger and an officer consensual. It cited the following factors in favor of its decision finding the exchange consensual,

**{¶35}** "There were ample grounds for the District Court to conclude that 'everything that took place between Officer Lang and [respondents] suggests that it was cooperative' and that there 'was nothing coercive [or] confrontational' about the

11

encounter. There was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, *no command,* not even an authoritative tone of voice. It is beyond question that had this encounter occurred on the street, it would be constitutional." (Emphasis added.)

{¶36} Contrary to the majority's conclusion, *State v. Hardin*, 2d Dist. Montgomery No. 21177, 2006-Ohio-3745, is not germane to the resolution of this case because *Hardin* does not discuss or analyze the language employed by officers; it simply concludes that the suspect was "asked if he would mind taking off his shoes[,]" and the suspect took off his shoes in response. *Id.* at ¶6.

{¶37} Although we must defer to the trial court's resolution of factual questions if its conclusions are supported by competent, credible evidence, we are not bound to its findings if the record shows otherwise. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996).

{¶38} The trial court erroneously recites the words exchanged between appellant and the officers in question in its findings of facts. It likewise mischaracterizes the officer's statements to Murray as "asking" him for consent. Its findings state in part:

{¶39} "The officer then asked defendant if he would 'mind emptying out your pockets real quick?' The defendant replied 'no' and did so. The assisting officer then asked the defendant if he would do him a quick favor and asked defendant if he would mind taking off his shoes 'real quick.' He further asked 'Take your shoes off please.' The defendant's shoes were not laced up and loose on his feet and he quickly stepped out of his high top sneakers. After observing what appeared to be a baggie of heroin in defendant's right shoe, the defendant was arrested * * *."

12

{¶40} The trial court misstates that the exchange ends with the officer saying "please" instead of "for me." The trial court also labels both the officer's statements to Murray regarding his shoes as "asking" him to take off his shoes. It also changes the officer's words and finds the officer inquired "if he would mind *taking* off his shoes 'real quick.'" On the dashcam video, the officer, however, is clearly heard saying "Do you mind, just *take* off your shoes real quick," immediately followed by "Just take off your shoes for me." Even assuming the officer began this exchange as a question, he changed midstream and makes commands. The officer's statements to Murray regarding the removal of his shoes direct him to take off his shoes.

{¶41} There are four types of sentences. At issue here is the difference between an interrogative sentence, which asks a question, and an imperative sentence, which gives a command. *Basic English Grammar*, 1996, Grebel & Pogrund. An interrogative sentence always ends in a question mark. *Id.* at 31. Interrogative sentences or questions usually begin with a question word, such as who, which, where, why, when, do, and how. Joerg Poehland, *Englisch-Hilfen.de*, https://www.englisch-hilfen.de/en/grammar/question_ words.htm and https://www.ecenglish.com.learnenglish/lessons/using-do-and-does (accessed Nov. 9, 2017).

{¶42} The officer's first statement to Murray blends an interrogative sentence with an imperative one. The officer says, "Do you mind, just take off your shoes real quick," then immediately says, "Just take your shoes off for me." The officer begins the sentence using a question word "do," but instead of completing the question and asking, "*Do you mind taking your shoes off real quick?*", he finishes his sentence as an imperative one, i.e., "just take off your shoes real quick." The officer blended two

sentence types and did not complete the question format of the sentence that he began. The officer's final statement to Murray regarding his shoes, "Just take your shoes off for me," however, is a completed imperative sentence commanding Murray to remove his shoes.

{¶43} A "command" is defined in part as "1. To give orders to : DIRECT. 2 To have authoritative control over : RULE." *Webster's II New College Dictionary* 224 (1999). Whereas a "request" is "1. To ask for. 2. To ask (one) to do something." *Id.* at 942. And "ask" is defined as "1. To put a question to." *Id.* at 66. Further, there are several ways to make commands sound polite. Cambridge University Press, https://dictionary.cambridge.org/grammar/british-grammar/functions/commands-and-instructions (accessed Nov. 9, 2017). The use of the word "please" at the end of an imperative sentence, such as, "brush your teeth please" is still a command. *Id.*

{¶44} Here, Murray was a backseat passenger of the vehicle when officers removed him from the car and conducted a pat down search. There were two uniformed officers on either side of him. They secured consent to search his pockets. With regard to his shoes, however, the substance of the officer's statement twice directed Murray to take his shoes off. Murray complied with the officer's command.

{¶45} As stated, the language employed by the officer did not reflect that Murray had a choice, and his prefacing his command with the phrases "can you do me a quick favor," and "do you mind," does not transform the command into a question in which Murray was presented with a choice.

14

**{¶46}** The typical reasonable person upon hearing the exchange between the officer and Murray would not objectively believe that the officer asked for permission to search his shoes; he directed Murray to remove them.

**{¶47}** And instead of analyzing the officer's statements to Murray using rules of grammar, the majority blindly concludes that the officer "asked" and received consent to search his shoes. The majority's and trial court's conclusions that consent was granted is not supported by competent credible evidence. The last words from the officer to Murray are, "Just take your shoes off for me." Whether deemed a clarification or change of the immediately preceding blended sentence, this is *objectively* a command!

**{¶48}** Accordingly, the state failed to meet its burden by clear and convincing evidence that Murray gave consent to search his shoes, and as such, I dissent.