LUKEHART, Appellant,

v.

WEST NINTH STREET PARTNERS, INC. et al., Appellees. █

[Cite as *Lukehart v. W. Ninth Street Partners, Inc.* (2000), 137 Ohio App.3d 361.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 75981

Decided April 3, 2000.

---

*Jeffrey A. Huth,* for appellant.

*Van Aken, Withers & Webster* and *Dennis R. Spirgen,* for appellees.

---

JAMES D. SWEENEY, Judge.

Plaintiff-appellant Cora Ann Lukehart ("Lukehart") appeals from the granting of defendants-appellees West Ninth Street Partners, Inc.'s ("WNSP") and Mat-

thew Gillespie's ("Gillespie") joint motion for summary judgment. For the reasons adduced below, we affirm.

A review of the record on appeal indicates that Lukehart and a group of her friends were celebrating New Year's Eve on December 31, 1996, in downtown Cleveland. At a bar/restaurant known as "The Blind Pig," Lukehart and her friends met Craig Coffey. Lukehart had known Coffey since early December 1996, and had visited his apartment on three or four separate occasions prior to that night. At some point, near closing time, Coffey suggested that they go to his apartment on the third floor of 1281 West Ninth Street to continue their celebration. The building at 1281 West Ninth Street, a warehouse-type structure, was in the process of being renovated and remodeled into apartments and was owned by WNSP, whose sole shareholder was Gillespie.[1] Coffey, with the permission of Gillespie, was permitted to live in the building in exchange for monitoring the otherwise vacant building, but Coffey did not pay any rent.

On the third floor of the building, at the top of the stairwell, there was a third-floor hallway with two doors in that hallway. Through one door, Coffey had constructed some walls to divide the large space into a smaller self-contained section in which he had set up housekeeping. The other door was marked "Danger–Keep Out" and had a hook-and-eye latch securing the door.[2] This other door with signage led to an unfinished area where, along with construction debris, there was a hole in the floor. This hole, an abandoned elevator shaft, was completely surrounded on three sides by a four-foot high barrier constructed from sheets of plywood, the plywood being firmly secured to large wooden posts. The fourth side of the shaft was a wall of the building which went from the floor to the ceiling. The shaft itself, inside the barricade, was uncovered.

In the early morning hours of January 1, 1997, between 3:00 to 4:00 a.m., Lukehart, accompanied by a female friend and Coffey, went to Coffey's apartment. The trio shared more beer at the apartment. After a short time, Lukehart's female friend decided to leave. Coffey escorted the female friend from the building and then returned to his apartment. Upon Coffey's return to the apartment, he and Lukehart engaged in sexual relations, falling asleep prior to 5:00 a.m. Lukehart awoke several hours later to find that she was at the bottom of the elevator shaft, naked with injuries to her legs and head. Lukehart did not know how she came to be at the bottom of the darkened elevator shaft,

---

1. The building had a total of four floors. The first floor was occupied by a business only. The second floor was an unrenovated open space used for storage. The third floor was largely unrenovated except for Coffey's self-contained living space. The fourth floor was also unrenovated. See Coffey deposition at 10–12, 34; Gillespie deposition at 13.

2. Lukehart testified that she noticed the Danger sign on the second door when she arrived at the apartment. Lukehart deposition at 72–73.

but she speculated that she had been sleepwalking. Toxicology testing on Lukehart's blood, drawn from her person at least seven hours after she awoke, indicated that her blood-alcohol level was 0.04 percent.[3]

Coffey awoke at 11:00 a.m. that New Year's day. Finding no one beside him, he at first assumed that Lukehart had gone home. Upon seeing her clothes, he went looking for Lukehart on the fourth floor but did not find her. In searching the third floor, he heard Lukehart calling for help. Coffey followed the voice over to the elevator shaft and looked over the intact barricade. The shaft was dark and he could not see Lukehart, but Lukehart told him that she was at the bottom of the shaft. See Coffey deposition at 54. Coffey called emergency personnel, who rescued Lukehart and transported her to a local hospital.

Lukehart filed this premises liability negligence action on January 24, 1997. Subsequent to responsive pleading and discovery, defendants-appellees filed a joint motion for summary judgment on September 8, 1998. Thereafter, Lukehart filed a brief in opposition to summary judgment on October 19, 1998. Finally, defendants-appellees filed a reply brief on November 2, 1998, relative to summary judgment. Without opinion and using a half-sheet status form entry, the trial court granted the motion for summary judgment on January 8, 1999. Lukehart filed her notice of appeal from that final order on February 8, 1999. Two assignments of error, which will be addressed jointly, are presented for review.

"I

"The trial court erred to the prejudice of appellant by granting summary judgment to defendants where, at the very least, a question of material fact existed as to whether the building at 1281 West Ninth Street was being used as 'residential premises.'

"II

"The trial court erred to the prejudice of appellant by granting summary judgment to defendants where, at the very least, a question of material fact existed as to whether the building at 1281 West Ninth Street was being used as 'residential premises,' the resolution of which was necessary to determine the standard of care owed by defendant to plaintiff."

The standard of review for a motion for summary judgment was generally stated in *State ex rel. Zimmerman v. Tompkins* (1996), 75 Ohio St.3d 447, 448–449, 663 N.E.2d 639, 640–641, as follows:

---

**3.** According to her deposition testimony, Lukehart visited five bars that evening, consuming "about" four to five glasses of champagne, three vodka-based mixed drinks, and three glasses of beer. Lukehart deposition at 78.

"Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

" * * *

"Summary judgment is appropriate where the nonmoving party does not produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus; *State ex rel. Morley v. Lordi* (1995), 72 Ohio St.3d 510, 513, 651 N.E.2d 937, 940. When a motion for summary judgment is made and supported as provided in Civ.R. 56, the nonmoving party may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing that there is a genuine triable issue. Civ.R. 56(E); *Jackson v. Alert Fire & Safety Equip., Inc.* (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027, 1031." See, also, *Celotex v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265.

Subsequent to *Tompkins,* in *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 144–145, 677 N.E.2d 308, 316–317, the Ohio Supreme Court limited the third paragraph of the syllabus of *Wing, supra,* by reasserting reliance on *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274:

"[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, *the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied.* However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so

respond, summary judgment, if appropriate, shall be entered against the nonmoving party." (Footnote omitted; italicization in original.)

Instead of applying and arguing traditional common-law premises liability principles of the duty owed to trespassers, licensees, and invitees, appellant solely argues that Ohio's Landlord Tenant Act ("Act"), R.C. Chapter 5321, governs the situation before us. Appellant reasons that the Coffey "apartment" was a "residential premises," as defined by R.C. 5321.01(C) and (F),[4] which created a landlord-tenant relationship between Coffey and defendants-appellees. By virtue of this relationship, appellant argues that defendants, as landlords, owed Lukehart, a guest of the tenant, a statutorily imposed duty of care pursuant to R.C. 5321.04 and that the failure of such a duty constitutes negligence *per se.*

Appellant next posits, correctly, that R.C. 5321.04(A)(1) requires a landlord to "[c]omply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety * * *." Finally, appellant, with an eye to demonstrating a breach of R.C. 5321.04(A)(1), cites to Cleveland Codified Ordinances 369.16(a), which requires that "[a]ll interior walls and floors of every dwelling structure shall be maintained free of holes, * * *." Appellant maintains that defendants committed negligence *per se* in "allowing a gaping hole to remain in the floor in the third story hallway * * *." See appellant's brief at 12.

There are a number of problems with appellant's approach. First, the elevator shaft, which appellant characterizes as a "gaping hole," was not located in the third floor hallway; instead, it was located in an unfinished space undergoing renovation, behind a door marked "Danger–Keep Out" off the third floor hallway.

Second, appellant attempts to construe the entire structure as a "residential premises" so as to gain the benefit of the Landlord–Tenant Act. This attempt is misplaced by the plain language of R.C. 5321.01(F), which, for purposes of defining "residential premises" under the Act, limits a "dwelling unit" to that part of the structure "that is used for a home, residence, or sleeping place * * *." In the present case, the only portion of the entire structure which was used as a "home, residence, or sleeping place" was that section of the third floor area containing Coffey's self-contained living space. Accordingly, the third floor space

---

4. R.C. 5321.01(C) and (F) provide:

"(C) 'Residential premises' means a *dwelling unit* for residential use and occupancy and the structure of which it is a part, the facilities and appurtenances in it, and the grounds, areas, and facilities for the use of tenants generally or the use of which is promised the tenant. * * *

"* * *

"(F) 'Dwelling unit' means a structure or the part of a structure that *is used as a home, residence, or sleeping place* by one person who maintains a household or by two or more persons who maintain a common household." (Italicization added.)

containing the elevator shaft was not, by definition, a "dwelling space," which eliminates that unfinished space from being a "residential premises" for purposes of the Act. Therefore, the Act has no application to the elevator shaft in question, and the trial court did not err in granting defendants' summary judgment as a matter of law.

Assignments overruled.

*Judgment affirmed.*

O'DONNELL, P.J., and ROCCO, J., concur.