[Cite as *State v. Curtis*, 2024-Ohio-4625.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-01-001 |
| | : | O P I N I O N |
| - vs - | | 9/23/2024 |
| | : | |
| WILLIAM F. CURTIS, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI 20230104


Jess C. Weade, Fayette County Prosecuting Attorney, and Rachel S. Martin, Assistant Prosecuting Attorney, for appellee.

Steven H. Eckstein, for appellant.


**HENDRICKSON, J.**

{¶ 1} Appellant, William F. Curtis, appeals from his conviction in the Fayette County Court of Common Pleas for importuning. For the reasons discussed below, we affirm appellant's conviction.

{¶ 2} On March 19, 2023, Josh Brannigan, his fiancé, and his 10-year-old daughter, A.B., were shopping at a grocery store in Washington Court House, Fayette County, Ohio. At one point, Brannigan saw appellant in the noodle aisle. Approximately five minutes later, A.B. took off down the dairy aisle and was about three feet in front of Brannigan. Appellant exited a side aisle near A.B., stared at her, looked her up and down and stated, "I'd like to get that pussy." Brannigan, standing about three feet away, heard the comment and confronted appellant. Brannigan asked appellant, "What the f---did you just say?" Appellant replied, "I'm sorry, I'm sorry." Brannigan told appellant to leave the store and then approached store management and asked that the police be called.

{¶ 3} Officer Trevor Phillips was dispatched to the grocery store, where he took statements from Brannigan and appellant. Appellant initially told Officer Phillips that he had only said the word "pussy." He then claimed that he could not recall what he said. When questioned further, he indicated that he "might have stated something along the lines of 'pussy.'" Officer Phillips pulled security footage from inside the grocery store. The security recording did not contain any audio, but it did depict appellant stopping near A.B in the store, appellant staring at A.B., appellant's lips moving as A.B. walked past him, and Brannigan confronting appellant.

{¶ 4} Detective Mathew Ellis also interviewed appellant about the incident and the interview was recorded. During the interview, appellant admitted that he saw A.B. in the grocery store and, at a minimum, said the word "pussy." Later in the conversation, when directly asked by Detective Ellis if he had stated, "I'd like to get that pussy," appellant admitted to making the statement. Appellant clarified that he was not talking about a cat when he made the statement. He initially indicated that he had been attracted to A.B. because he had not realized she was a child. However, he later agreed with the detective that he knew A.B. was not an adult. Appellant told Detective Ellis he had made the

statement because "[t]he Devil took him [and] grabbed him." Appellant promised the detective he would "never do it again."

{¶ 5} Appellant was subsequently indicted on one count of importuning in violation of R.C. 2907.07(A), a felony of the third degree. He pled not guilty to the charge and waived a jury trial. A one-day bench trial commenced on November 14, 2023. The state presented testimony from Brannigan, Officer Phillips, and Detective Ellis and entered into evidence the security recording from the grocery store and appellant's recorded statement to Detective Ellis. At the close of the state's case, appellant moved for acquittal pursuant to Crim.R. 29. The trial court denied his motion, and appellant rested his defense without calling any witnesses.

{¶ 6} The trial court found appellant guilty as charged. In finding appellant guilty of importuning, the court stated, in relevant part, as follows:

> This is a concerning case. Watching video from [the grocery store], there's no doubt the defendant looks this little girl up and down as she walks past him. You can clearly see his head bob, looking right at her. Clearly, she's under thirteen years old and looking at the size of her in that video, it should have been clear to the defendant, or he was reckless in that regard. I find beyond a reasonable doubt that he made the statement, "I'd like to get that pussy." So, the final question is . . . is that solicitation? The case law that I've been able to find in this area indicates that if there is evidence that the defendant sought, influenced, invited, tempted, led or pressured the victim to engage in sexual activity, that's enough for importuning. The Court is very concerned about the way he phrased the statement. It was an invitation, the way he phrased that statement, and I find that beyond a reasonable doubt, as was in the meaning of the statute relating to importuning; and thus, find him guilty.

The court sentenced appellant to 24 months in prison and classified him a Tier I sex offender.

{¶ 7} Appellant timely appealed his conviction, raising two assignments of error for review.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT ERRED IN FINDING THE DEFENDANT-APPELLANT GUILTY AS THERE WAS INSUFFICIENT EVIDENCE OF IMPORTUNING.

{¶ 10} In his first assignment of error, appellant contends his conviction for importuning is not supported by sufficient evidence as the state did not present any evidence that A.B. heard appellant's statement that he would "like to get that pussy."

{¶ 11} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52; *State v. Grinstead*, 2011-Ohio-3018, ¶ 10 (12th Dist.). Therefore, "'[a] challenge to the sufficiency of the evidence is reviewed de novo.'" *In re P.M.S.*, 2023-Ohio-3825, ¶ 18, fn. 3 (12th Dist.), quoting *State v. Liming*, 2023-Ohio-2817, ¶ 40 (12th Dist.). *See also State v. Bertram*, 2023-Ohio-1456, ¶ 8. De novo review "does not mean an [appellate court] simply reweigh[s] the evidence and reach[es] [its] own conclusion." *In re P.M.S.* at ¶ 18. Rather, in conducting a de novo review in the context of a sufficiency of the evidence challenge, "'[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 12} A sufficiency-of-the-evidence standard "'does not permit a court to make its own subjective determination of guilty or innocence,' nor does it 'require scrutiny of the reasoning process actually used by the factfinder.'" *In re P.M.S.* at ¶ 18, quoting *Jackson v. Virginia*, 443 U.S. 307, 319, fn. 13 (1979). "[T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found

- 4 -

the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) (Citation omitted.) *Jackson* at 318-319, quoting *Woodby v. INS*, 385 U.S. 276, 282 (1966). "'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." R.C. 2901.05(E). "Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt." *Id.* Rather, reasonable doubt is "doubt based on reason and common sense." *Id.*

{¶ 13} R.C. 2907.07(A) provides that "[n]o person shall solicit a person who is less than thirteen years of age to engage in sexual activity with the offender, whether or not the offender knows the age of such person." R.C. 2907.07(A) does not specify a degree of culpability. Pursuant to R.C. 2901.21(C)(1), "[w]hen language defining an element of an offense that is related to knowledge or intent or to which mens rea could fairly be applied neither specifies culpability nor plainly indicates a purpose to impose strict liability, the element of the offense is established only if a person acts recklessly." Applying R.C. 2901.21(C) as it is written since its meaning is unambiguous and definite, we find that "recklessly" is the degree of culpability for a violation of the importuning statute. *Accord State v. Kelly*, 2021-Ohio-2007, ¶ 15-18 (4th Dist.); *In re J.W.*, 2004-Ohio-3404, ¶ 19 (2d Dist.). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). "A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." *Id.*

{¶ 14} Sexual activity means "sexual conduct or sexual contact, or both." R.C.

- 5 -

2907.01(C). Sexual conduct includes "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another." R.C. 2907.01(A). Sexual contact involves "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the other person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). "Solicit means to 'seek, to ask, to influence, to invite, to tempt, to lead on, to bring pressure to bear.'" *Paul*, 2012-Ohio-3205 at ¶ 13, quoting *State v. Tarbay*, 2011-Ohio-1389, ¶ 8 (10th Dist.). *See also State v. Brickman*, 2024-Ohio-1005, ¶ 12 (3d Dist.); *State v. Skatzes*, 2004-Ohio-6391, ¶ 68; *Ohio Jury Instructions*, CR § 507.07 (2024). We find that "to seek" and/or "to invite" are most appropriate in this case. *Miriam-Webster Online Dictionary* defines to "seek" and to "invite" as follows:

> *seek*: to resort to; go to; to go in search of; look for; to try to discover; to ask for; to try to acquire or gain; aim at; to make an attempt; to make a search or inquiry; to be sought; or to be lacking
>
> *invite*: to request the presence or participation of; to request formally; to urge politely; to increase the likelihood of; or to offer an incentive or inducement to.

*Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/seek and https://www.merriam-webster.com/dictionary/invite (last accessed Sep. 18, 2024).

{¶ 15} Following our review of the record, we find the state presented sufficient evidence that, if believed, would convince a rational trier of fact that appellant was guilty of each of the essential elements of the crime of importuning. Contrary to appellant's claims, the victim hearing the defendant's solicitation for sexual activity is not an essential element of R.C. 2907.07(A). Rather, the state needed only to produce evidence that A.B.

was less than 13 years old and that appellant recklessly solicited her to engage in sexual activity. Here, the state presented testimony and video evidence about the events that occurred at the grocery store. Appellant can be seen on video staring at A.B., looking her up and down, and making a statement when she was near him. According to Brannigan, an eyewitness to the event, appellant stated, "I'd like to get that pussy." Through Brannigan's testimony, the security video, and the admissions appellant made during his recorded interview with Detective Ellis, the state presented sufficient evidence to establish that appellant invited and sought sexual activity with ten-year-old A.B. when, after looking her up and down and while looking in her direction, he stated, "I'd like to get that pussy" loud enough for others to hear, including Brannigan. Appellant admitted during his interview with Detective Ellis that he was attracted to A.B. and made the statement after watching her walk past him. When he was asked by the detective why he made the statement, appellant stated, "[t]he Devil took him [and] grabbed him." Viewing the evidence in the light most favorable to the prosecution, appellant's statement "I'd like to get that pussy" is a statement aiming or welcoming (seeking or inviting) sexual activity with A.B., made while staring at A.B., looking her up and down and loud enough for others to hear. It implies some type of sexual conduct (vaginal penetration via intercourse or by an object or cunnilingus) or sexual conduct (touching of female genital or pubic region for sexual gratification).

{¶ 16} The dissent believes that appellant was only expressing a thought that he had. However, the statement could also be viewed as more than just a mere thought based upon the facts presented. Appellant verbalized his sexual pedophile desires in a public setting, in the presence of other people and loud enough that anyone close to him could hear him. As A.B.'s father testified, A.B. was three feet in front of him and he was about three feet from appellant when appellant made the statement. The record indicates

that A.B. was thus very near appellant when he made the statement. It is uncommon for one to express their deviant sexual interest in such a manner and place. In doing so, a reasonable person, viewing the evidence in a light most favorable to the prosecution, could interpret the statement as one that is seeking or inviting A.B. to engage in sexual activity. Thus, in viewing the evidence in this fashion, a rational trier of fact could have found beyond a reasonable doubt that appellant made the statement to seek or invite A.B. to engage in sexual conduct or sexual contact with him. Appellant's conviction was, therefore, supported by sufficient evidence.

{¶ 17} We recognize that this is a difficult case, and that a reasonable trier of fact reviewing the evidence could, in the alternative, have concluded that appellant uttered the statement "I'd like to get that pussy" not as a means of soliciting sexual activity with A.B., but as a way of expressing his repugnant pedophilic desires. This is essentially the view of the facts taken by our dissenting colleague.[1]

{¶ 18} We respectfully disagree with our dissenting colleague's approach because the sufficiency standard that we apply "does not permit a court to make its own subjective determination of guilt or innocence" nor does it "require scrutiny of the reasoning process actually used by the factfinder." *Jackson*, 443 U.S. at 319, fn. 13. Rather, the sufficiency

---

1. In footnote 5, the dissent explains to the reader why appellant was charged with a third-degree felony under the importuning statute instead of a second-degree felony (the felony is raised one degree only if a defendant has a prior conviction of a sexually oriented offense or a child victim oriented offense). However, appellant never questioned nor challenged, below or in the present appeal, the degree of felony in his indictment. Therefore, this information is not relevant in addressing the legal issues before us, i.e., a facial constitutional challenge to the importuning statute and the sufficiency and manifest weight of the evidence. Moreover, the dissent asserts in footnote 5 that the "*record indicates that Curtis had no criminal history prior to him being arrested and charged with importuning in this case.*" (Emphasis added.) The "record" the dissent refers to is the entire record, not the "trial record." When addressing sufficiency and manifest weight of the evidence issues, we are limited to only the evidence admitted at trial. To do so otherwise is improper. There simply was no evidence presented at trial as to appellant's prior record. Also, "prior criminal record" includes all prior convictions from misdemeanors to felony convictions. A defendant's importuning charge is only elevated to a second-degree felony where a defendant has a prior conviction of a sexually oriented offense or a child victim oriented offense. Therefore, any other type of prior convictions or lack thereof have no bearing on whether appellant committed the offense of importuning beyond a reasonable doubt.

standard requires that we ask whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Emphasis in original.) *Id.* at 319. In this case, we find that the evidence is such that a reasonable trier of fact could conclude that appellant sought or invited A.B., a ten-year-old girl, to engage in sexual activity by stating, "I'd like to get that pussy" while staring at her, looking her up and down, and admitting he made the statement because, "[t]he Devil took him [and] grabbed him." Thus, under the facts presented, a reasonable trier of fact could find appellant guilty of importuning. That appellant's statement, "I'd like to get that pussy" could be viewed in a different light—a light not favorable to the prosecution—does not change our conclusion as we must adhere to the directive that, for a sufficiency analysis, all evidence be viewed in the light most favorable to the prosecution. *See In re P.M.S.*, 2023-Ohio-3825 at ¶ 17-18 (12th Dist.). Viewing the evidence in this manner, we find the state presented sufficient evidence to prove all elements of the offense of importuning.[2]

### Constitutional Challenge

{¶ 19} Appellant further argues within his first assignment of error that the victim hearing the soliciting statement is a necessary element of the offense, otherwise R.C. 2907.07(A) constitutes an impermissible restriction on the right to free speech, in violation of the First Amendment to the United States Constitution. Essentially, appellant seeks to bring a facial challenge to the constitutionality of R.C. 2907.07(A), arguing that the statute fails strict-scrutiny review because the statute's restriction on speech relating to sexual

---

2. We reject our dissenting colleague's suggestion that appellant would have had to phrase his statement in the form of a question to constitute a solicitation for sexual activity. Whether appellant stated, "I'd like to get that pussy" or stated, "Can I get that pussy?" does not affect our analysis. Under the facts of this case, a rational trier of fact could find beyond a reasonable doubt that appellant sought or invited sexual activity with the victim.

activity is not the least-restrictive means readily available of serving the compelling government interest of protecting children from requests to engage in sexual activity.[3]

{¶ 20} We note that appellant did not challenge the constitutionality of R.C. 2907.07(A) in the trial court. "It is well established that 'the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court.'" *State v. Elkins*, 2024-Ohio-1314, ¶ 34 (12th Dist.), quoting *State v. Awan*, 22 Ohio St.3d 120, 122 (1986). An appellant's "'[f]ailure to raise the issue of the constitutionality of a statute or its application at the trial court level generally constitutes a waiver of that issue and need not be heard for the first time on appeal.'" *State v. Myers*, 2014-Ohio-3384, ¶ 12 (12th Dist.), quoting *State v. Golden*, 2014-Ohio-2148, ¶ 11 (10th Dist.). *Accord Awan* at 122. However, a reviewing court has the discretion to consider "constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it." *In re M.D.,* 38 Ohio St.3d 149, 151 (1988). *See also Elkins* at ¶ 35.

{¶ 21} Although we retain discretion to consider the issue, appellant has not argued plain error or established that the rights and interests involved warrant it. *In re M.D.* at 151; *State v. Killeen*, 2019-Ohio-2264, ¶ 15 (9th Dist.). Furthermore, even if we were to consider appellant's argument, it fails on the merits for the same reasons already expressed in *State v. Robinson*, 2009-Ohio-3673 (12th Dist.), *State v. Worst*, 2005-Ohio-6550 (12th Dist.), *State v. Tarbay*, 2004-Ohio-2721 (1st Dist.), and *State v. Snyder*, 2003-

---

3. "A statute or ordinance is invalid 'on its face' when it is 'unconstitutional in every conceivable application' or when 'it seeks to prohibit such a broad range of protected conduct that is unconstitutionally overbroad.'" *State v. Worst*, 2005-Ohio-6550, ¶ 42 (12th Dist.), quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 796 (1984). By contrast, an "as applied" challenge "contends that [a statute or ordinance] is unconstitutional 'as applied' to the litigant's particular speech [or other] activity, even though the [statute or ordinance] may be capable of valid application to others." (Bracketed text in original.) *Id.*, quoting *Regal Cinemas, Inc. v. Mayfield Hts.*, 137 Ohio App.3d 361, 72 (8th Dist. 2000).

Ohio-6399 (3d Dist.).[4] "While the First Amendment protects 'two adults communicating about and soliciting sexual activity' . . . it does not protect an adult who attempts to persuade [or invites] a minor, or a person he believes to be a minor, to engage in sex acts with him." *Worst* at ¶ 46, quoting *Snyder* at ¶ 19. "'The harm is in the asking,' not the discussion of it. . . . [T]here is simply 'no First Amendment right to attempt to persuade minors to engage in illegal sexual acts.'" *Tarbay* at ¶ 17, quoting *State v. Bolden*, 2004-Ohio-2315, ¶ 37 (2d Dist.) and *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000). R.C. 2907.07(A) is not overbroad and does not restrict more conduct or speech than is necessary to achieve the interests of the state in promoting the welfare of children. R.C. 2907.07(A), just like other provisions of the importuning statute,

> does not restrict speech about sex in general, nor does it restrict adults and minors from communicating about sex. The statute also does not restrict speech about adults engaging in sexual conduct with minors. The statute prohibits only speech which solicits minors to engage in illegal sexual activity with adults.

*Snyder* at ¶ 29. R.C. 2907.07(A) therefore does not infringe on First Amendment rights.

{¶ 22} Appellant's arguments in his first assignment of error are, therefore, without merit and are hereby overruled.

{¶ 23} Assignment of Error No. 2:

{¶ 24} THE GUILTY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 25} In his second assignment of error, appellant contends that his importuning conviction was against the manifest weight of the evidence and that the trial court erred by finding Brannigan's testimony credible.

---

4. Though *Robinson*, *Worst, Tarbay,* and *Snyder* dealt with challenges to the constitutionality of sections (D)(1) and (D)(2) of the importuning statute, R.C. 2907.07, we find their respective analysis instructive and applicable to appellant's challenge to the constitutionality of R.C. 2907.07(A).

{¶ 26} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 2012-Ohio-2372, ¶ 14 (12th Dist.). To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire trial record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 2009-Ohio-2814, ¶ 66 (12th Dist.). "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 2011-Ohio-5226, ¶ 81 (12th Dist.), quoting *State v. Walker*, 2007-Ohio-911, ¶ 26 (12th Dist.). An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387.

{¶ 27} Having thoroughly reviewed the record in the present case, we find that appellant's conviction for importuning is supported by the manifest weight of the evidence. Though appellant argues Brannigan was not a credible witness as he was combative and aggressive on the stand, Brannigan's credibility and the weight assigned to his testimony were issues for the trier of fact. *State v. Lowry*, 2020-Ohio-1554, ¶ 19 (12th Dist.). Brannigan's testimony about appellant's conduct and the solicitation appellant directed towards A.B. were corroborated by the grocery store's security footage and by appellant's admissions during his interview with Detective Ellis. As such, the trial court was entitled to find that appellant solicited sexual activity with ten-year-old A.B. when, after looking her up and down, he stated, "I'd like to get that pussy."

{¶ 28} The trier of fact did not clearly lose its way and create such a manifest miscarriage of justice that appellant's conviction must be reversed. Appellant's second assignment of error is therefore overruled.

{¶ 29} Judgment affirmed.

BYRNE, J., concurs.

S. POWELL, P.J., dissents.

**S. POWELL, P.J., dissenting.**

{¶ 30} Because I find myself at odds with the majority opinion, I respectfully dissent.

### Facts and Procedural History

{¶ 31} On April 21, 2023, the Fayette County Grand Jury returned an indictment charging Curtis with one count of importuning in violation of R.C. 2907.07(A), a third-degree felony in accordance with R.C. 2907.07(G)(2).[5] Pursuant to R.C. 2907.07(A), "[n]o person shall solicit a person who is less than thirteen years of age to engage in sexual activity with the offender, whether or not the offender knows the age of such person." The charge arose after it was alleged Curtis, then 66-years-old, solicited A.B., a then ten-year-old girl, to engage in sexual activity with him. This alleged solicitation occurred on the afternoon of March 19, 2023 at a Kroger grocery store located in Washington Court House, Fayette County, Ohio. Curtis was arraigned on April 26, 2023

---

5. Pursuant to R.C. 2907.07(G)(2), on a first offense, importuning in violation of R.C. 2907.07(A) is charged as a third-degree felony. Importuning in violation of R.C. 2907.07(A) is a second-degree felony in circumstances where "the offender previously has been convicted of a sexually oriented offense or a child-victim oriented offense" as those terms are defined by R.C. 2950.01(A) and 2950.01(C), respectively. R.C. 2907.07(G)(2). The record indicates that Curtis had no criminal history prior to him being arrested and charged with importuning in this case, thereby rendering the importuning charge being brought against Curtis a third-degree felony rather than a second-degree felony.

and entered a plea of not guilty.

{¶ 32} On July 31, 2023, the trial court issued an entry finding Curtis was competent to stand trial. The trial court also determined that Curtis did know, at the time he was alleged to have solicited A.B. to engage in sexual activity with him, the wrongfulness of his conduct.

{¶ 33} On November 14, 2023, the matter proceeded to a one-day bench trial. During trial, the trial court heard testimony from a total of three witnesses. The testimony elicited from these three witnesses established that on the day in question, March 19, 2023, and while in a Kroger grocery store located in Washington Court House, Fayette County, Ohio, Curtis commented, "I'd like to get that pussy," after the then ten-year-old A.B. walked past him. The testimony established that Curtis made this comment shortly after staring at A.B. for several seconds and looking her "up and down." The testimony also established that, while A.B. did not actually hear what Curtis had said to her after she had past him, A.B.'s father certainly did.

{¶ 34} A.B.'s father testified that after hearing Curtis' comment regarding his daughter, he turned around and said to Curtis, "What the fuck did you just say?" To this, A.B.'s father testified that Curtis stared at him "like a deer in the headlights and was like, 'I'm sorry, I'm sorry." A.B. testified that he then told Curtis that "he better get the fuck out of the store before [he] beat his ass." A.B.'s father testified that he then reported the incident to Kroger's front customer service desk.

{¶ 35} The record indicates that the police were then called, following which Curtis was transported to the police station where he was subjected to a custodial interrogation. During this interrogation, Curtis admitted to stating, "I'd like to get that pussy," after the then ten-year-old A.B. had walked past him in the Kroger grocery store earlier that day. Explaining to police why he made that comment, Curtis claimed that "the Devil took him"

and "grabbed him." The record indicates that Curtis was thereafter arrested and charged with one count of third-degree felony importuning in violation of R.C. 2907.07(A).

{¶ 36} After both parties rested, and upon the admission of the state's two exhibits, the trial court issued its decision from the bench finding Curtis guilty as charged.[6] In so doing, the trial court initially stated:

> This is a concerning case. Watching the video from Kroger's, there's no doubt the defendant looks this little girl up and down as she walks past him. You can clearly see his head bob, looking right at her. Clearly, she's under thirteen years old and looking at the size of her in that video, it should have been clear to the defendant, or he was reckless in that regard. I find beyond a reasonable doubt he made the statement, "I'd like to get that pussy."

{¶ 37} Turning then to the real crux of the matter—whether Curtis stating, "I'd like to get that pussy," after the then ten-year-old A.B. walked past was Curtis soliciting A.B. to engage in sexual activity—the trial court stated:

> So, the final question [a]s brought out in the arguments is, is that solicitation? The case law that I've been able to find in this area indicates that if there is evidence that the defendant sought, influenced, invited, tempted, led or pressured the victim to engage in sexual activity, that's enough for importuning. The Court is very concerned about the way he phrased the statement. It was an invitation, the way he phrased that statement, and I find that beyond a reasonable doubt, as was in the meaning of the statute relating to importuning; and thus, [I] find him guilty.

The trial court, after setting forth the underlying reasoning for its guilty verdict, then scheduled the matter for sentencing and ordered a presentence-investigative report to be completed.

{¶ 38} On January 2, 2024, the trial court held the previously scheduled sentencing hearing. During this hearing, the trial court sentenced Curtis to serve 24 months in prison,

---

6. The state's two exhibits were the video surveillance footage taken of the incident and a recording of the custodial interrogation the police conducted shortly after the incident took place.

less nine days of jail-time credit. The trial court also classified Curtis as a Tier I sex offender and notified Curtis that he would be subject to a mandatory five-year postrelease control term upon his release from prison.

**Assignment of Error No. 1:**

{¶ 39} THE TRIAL COURT ERRED IN FINDING THE DEFENDANT-APPELLANT GUILTY AS THERE WAS INSUFFICIENT EVIDENCE OF IMPORTUNING.

{¶ 40} In his first assignment of error, Curtis argues the trial court's decision finding him guilty of importuning in violation of R.C. 2907.07(A) was not supported by sufficient evidence. I agree.

*Sufficiency of the Evidence Standard*

{¶ 41} A claim challenging the sufficiency of the evidence invokes a due process concern that raises the question of whether the evidence was legally sufficient to support the verdict as a matter of law. *State v. Clinton*, 2017-Ohio-9423, ¶ 165, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52. Such a challenge "requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 2013-Ohio-5202, ¶ 34 (12th Dist.). When making such a determination, "[t]he relevant inquiry is 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Roper*, 2022-Ohio-244, ¶ 39 (12th Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction." *State v. Carter*, 2018-Ohio-29, ¶ 7 (8th Dist.), citing *State v. Yarbrough*, 2002-Ohio-2126, ¶ 79-80.

{¶ 42} Rather, when reviewing whether a jury's verdict finding the defendant guilty

was supported by sufficient evidence, "[t]his court merely determines whether there exists any evidence in the record that the trier of fact could have believed, construing all evidence in favor of the state, to prove the elements of the crime beyond a reasonable doubt." *State v. Brummett*, 2024-Ohio-2332, ¶ 9 (12th Dist.). "'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." R.C. 2901.05(E). "'To reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary.'" *State v. Pangburn*, 2016-Ohio-3286, ¶ 13 (12th Dist.), quoting *Thompkins* at paragraph three of the syllabus. "A reversal based on insufficient evidence leads to an acquittal that bars a retrial." *State v. Powers*, 2024-Ohio-1521, ¶ 25 (12th Dist.).

*Importuning in Violation of R.C. 2907.07(A)*

{¶ 43} The trial court found Curtis guilty of importuning in violation of R.C. 2907.07(A). As noted above, pursuant to R.C. 2907.07(A), "[n]o person shall solicit a person who is less than thirteen years of age to engage in sexual activity with the offender, whether or not the offender knows the age of such person." R.C. 2907.01(C) defines "sexual activity" to mean "sexual conduct or sexual contact, or both." The term "sexual conduct" is defined by R.C. 2907.01(A) to mean "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another." On the other hand, the term "sexual contact" is defined by R.C. 2907.01(B) to mean "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually

arousing or gratifying either person."  "[T]he crime of importuning is complete when the solicitation occurs." *State v. Tarbay*, 2011-Ohio-1389, ¶ 8 (10th Dist.).

{¶ 44} The Ohio Revised Code does not define what it means to "solicit" as that term is used in R.C. 2907.07(A).  However, although not defined by the Ohio Revised Code, this court has nevertheless defined the term "solicit," when used in the context of the importuning statute, to mean "to seek, to ask, to influence, to invite, to tempt, to lead on, to bring pressure to bear." *State v. Paul*, 2012-Ohio-3205, ¶ 13 (12th Dist.).  This definition makes sense when considering the importuning statute, R.C. 2907.07, is meant to curtail adults from asking minors to engage in illegal sexual activity with them.  *See State v. Worst*, 2005-Ohio-6550, ¶ 45 (12th Dist.).  "[T]he harm is in the asking." *State v. Bolden*, 2004-Ohio-2315, ¶ 37 (2d Dist.).  Therefore, when a defendant is found guilty of importuning in violation of R.C. 2907.07(A), like Curtis was in this case, that finding cannot be based upon the defendant merely thinking about engaging in sexual activity with a person who is less than 13 years of age.  *See State v. Tarbay*, 2004-Ohio-27721, ¶ 17 (1st Dist.).

{¶ 45} Rather, given the plain language set forth in R.C. 2907.07(A), that finding must instead be based upon the defendant actually *soliciting* a person who is less than 13 years of age to engage in sexual activity with the defendant.  This can only be done in instances where the defendant sought, asked, influenced, invited, tempted, lead on, or brought pressure to bear upon an under 13-year-old person to engage in sexual activity with the defendant.  *See State v. Skatzes*, 2004-Ohio-6391, ¶ 68; *see also Ohio Jury Instructions*, CR § 507.07 (Rev. May 13, 2023) (defining "solicited," for purposes of the importuning statute, R.C. 2907.07, to mean "that the defendant sought, asked, enticed, urged, lured, influenced, invited, tempted, led on, or brought pressure to bear").  As defined by *Miriam-Webster Online Dictionary*, the words used to define the term "solicit"

as used in R.C. 2907.07(A)—to seek, to ask, to influence, to invite, to tempt, to lead on, and to bring pressure to bear—are separately defined to mean:

> (1) *seek*: to resort to; go to; to go in search of; look for; to try to discover; to ask for; to try to acquire or gain; aim at; to make an attempt; or to make a search or inquiry;

> (2) *ask*: to make a request of; to make a request for; to call for; or invite;

> (3) *influence*: the power or capacity of causing an effect in indirect or intangible ways; sway; or the act or power of producing an effect without apparent exertion of force or direct exercise of command;

> (4) *invite*: to request the presence or participation of; to request formally; to urge politely; welcome; to increase the likelihood of; or to offer an incentive or inducement to;

> (5) *tempt*: to entice to do wrong by promise or pleasure or gain; to induce to do something; or to cause to be strongly inclined;

> (6) *lead on*: to entice or induce to adopt or continue in a course or belief especially when unwise or mistaken; and

> (7) *bring pressure to bear*: to use with effect.

*Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/ (accessed Sept. 9, 2024).

*The Under 13-Year-Old Victim Hearing the Offender's Solicitation is Not an Essential Element of Importuning in Violation of R.C. 2907.07(A)*

**{¶ 46}** To support this assignment of error, Curtis initially argues that because A.B. did not actually hear him say, "I'd like to get that pussy" after she had walked by him in the Kroger grocery store, that there could be no solicitation as required to constitute importuning in violation of R.C. 2907.07(A). However, contrary to Curtis' claim, the under 13-year-old victim hearing the offender's solicitation for sexual activity is not an essential element of importuning as set forth in R.C. 2907.07(A). Rather, given the plain wording of the statute, the state needed only to establish, beyond a reasonable doubt, that Curtis

*solicited* the under 13-year-old A.B. to engage in sexual activity with him by seeking, asking, influencing, inviting, tempting, leading on, or bringing pressure to bear upon her. The essential elements of importuning in violation of R.C. 2907.07(A) are therefore the (1) offender soliciting (2) an under 13-year-old person (3) to engage in sexual activity (4) with the offender. To the extent Curtis argues the statute requires something more, like the under 13-year-old victim actually hearing the offender's solicitation, such an argument lacks merit.

### *Curtis' Commenting "I'd Like to Get that Pussy" is Not Solicitation for Sexual Activity as a Matter of Law*

{¶ 47} Notwithstanding my disagreement with Curtis' initial argument, after a full and thorough review of the record, as well as an extensive search of the relevant case law, I find myself duty bound to vote to reverse and vacate Curtis' conviction. I do not do this lightly. However, given the record in this case, it simply cannot be said that Curtis' stating, "I'd like to get that pussy" after the then ten-year-old A.B. walked past him was Curtis soliciting A.B. to engage in sexual activity with him. That is to say, Curtis proclaiming, "I'd like to get that pussy" after A.B. walked past him was not Curtis seeking, asking, influencing, inviting, tempting, leading on, or bringing pressure to bear on A.B. to engage in sexual activity. It was instead Curtis merely stating his pedophilic desires to engage in sexual activity with children like the ten-year-old A.B. Yet, notwithstanding the offensive nature of Curtis' sexual desires, Curtis merely voicing his sexual proclivity for children does not constitute importuning in violation of R.C. 2907.07(A). This is because, although soliciting an under 13-year-old child to engage in sexual activity is a crime, thinking about engaging in sexual activity with an under 13-year-old child is not. *Tarbay*, 2004-Ohio-2721 at ¶ 17. This would necessarily include the ten-year-old A.B.

{¶ 48} In so holding, I find it necessary to note that the issue in this case is not

what Curtis may have intended by commenting, "I'd like to get that pussy" after the ten-year-old A.B. had walked past him in the Kroger grocery store; the issue is instead whether Curtis in fact communicated, in words, conduct, or both, a request for A.B. to engage in sexual activity with him. This is because, although possibly constituting disorderly conduct in violation of R.C. 2917.11(A)(2), the importuning statute does not prohibit a person like Curtis from simply stating his or her desire to engage in illegal sexual activity with a child under the age of 13 years old.[7] "[T]he importuning statute does not prohibit an adult and child from communicating about sex, nor does it prevent two people, regardless of their age, from talking about sexual activity between a child and an adult." *Worst*, 2005-Ohio-6550 at ¶ 45.

**{¶ 49}** "Rather, the importuning statute prohibits communication meant to persuade the minor to engage in illegal sex acts." *Paul*, 2012-Ohio-3205 at ¶ 13. Therefore, because I find merit to Curtis' argument challenging the sufficiency of the evidence to support his conviction, I believe Curtis' first assignment of error should be sustained. *See, e.g., State v. Cooper*, 92 Ohio App.3d 108 (2d Dist.1994) (reversing appellant's importuning conviction upon finding appellant's request to an under 13-year-old girl to "pull down her clothes" was "sufficient to constitute a solicitation to the child to disrobe, at least partially," but not a request for the child to engage in "sexual activity" with appellant so as to constitute importuning in violation of R.C. 2907.07[A]).

**{¶ 50}** My decision is contrary to that of the trial court judge, who found Curtis' proclaiming "I'd like to get that pussy" after the ten-year-old A.B. had walked past him "was an invitation, the way he phrased that statement . . . ." However, as defined above,

---

7. Pursuant to R.C. 2917.11(A)(2), "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by… [m]aking unreasonable noise or *an offensively coarse utterance*, gesture, or display or communicating unwarranted and grossly abusive language to any person …." (Emphasis added.)

to "invite" means "to request the presence or participation of; to request formally; to urge politely; welcome; to increase the likelihood of; or to offer an incentive or inducement to . . . ." *Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/ (accessed Sept. 9, 2024). Nothing about Curtis' statement proclaiming that, "I'd like to get that pussy," after the ten-year-old A.B. walked past him was Curtis actually inviting A.B. to engage in sexual activity with him. To hold otherwise defies logic and goes against basic tenants of the English language.

{¶ 51} Within my research of the case, I have been unable to find any cases that contain analogous facts to the case at bar. This research includes the recent decision issued by the Ninth District Court of Appeals. *State v. Nielsen*, 2024-Ohio-617 (9th Dist.). Unlike in this case, in *Nielsen*, the offender not only commented that he wanted to "plant his seed" in the under 13-year-old victim, but also mailed seeds to the victim, an additional act that the Ninth District deemed significant when upholding the jury's verdict finding the offender guilty of importuning in violation of R.C. 2907.07(A). *Id.* at ¶ 30-33. Specifically, as the Ninth District stated, "[i]n the context of his comment that he wanted to 'plant his seed in her,' sending the seeds raised the reasonable inference that [the offender] 'solicited' [the victim] by 'invit[ing]' or 'bring[ing] pressure to bear' upon her to engage in sexual intercourse." *Id.* at ¶ 30. No such "reasonable inference" can be made in this case.

{¶ 52} In reaching this decision, I find it necessary to also note that Curtis' statement was not structured as an interrogative sentence. An interrogative sentence asks a question. *State v. Murray*, 2017-Ohio-9332, ¶ 41 (11th Dist.) (Wright, J., dissenting). Interrogative sentences "always end[] in a question mark" and "usually begin with a question word, such as who, which, where, why, when, do, and how. *Id.* Curtis' statement to A.B. that, "I'd like to get that pussy," does not end with a question mark.

Curtis' statement also does not begin with a question word such as who, when, where, or why. Curtis' statement, therefore, simply cannot be considered an interrogative sentence, i.e., Curtis' invitation for the ten-year-old A.B. to engage in sexual activity. Accordingly, given the nature in which Curtis' statement was structured, I find it impossible to conclude that Curtis' statement was akin to Curtis soliciting A.B. to engage in sexual activity. Curtis' statement was instead a declarative sentence; a declaration that he, Curtis, would like to engage in sexual activity with the ten-year-old A.B.

{¶ 53} A declarative sentence neither asks a question nor invites an answer or a response. To that end, even if Curtis' commenting to A.B. that, "I'd like to get that pussy," ended in a question mark, such a statement would be considered, at worst, a rhetorical question that was not seeking an answer. "A 'rhetorical question' is defined as 'a question not intended to elicit an answer but asked for rhetorical effect often with an assumption that only one answer is possible.'" *Backes v. Misko*, 486 S.W.3d 7, 26 (Tex.App. 2015), quoting *Webster's Third New International Dictionary* 1946 (1981). "[A] rhetorical question is phrased in the interrogative structure but is meant as an emphatic or evocative statement." Bryan A. Garner, *The Chicago Guide to Grammar, Usage, and Punctuation* (2016). Accordingly, because Curtis' statement that, "I'd like to get that pussy," was a declarative sentence; a declaration that he, Curtis, would like to engage in sexual activity with the ten-year-old A.B., rather than an interrogative sentence wherein Curtis was soliciting the ten-year-old A.B. to engage in sexual activity, I find merit to Curtis' first assignment of error, thus necessitating Curtis' first assignment of error be sustained.

**Assignment of Error No. 2:**

{¶ 54} THE GUILTY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 55} In his second assignment of error, Curtis argues the trial court's verdict

finding him guilty of importuning was against the manifest weight of the evidence. I again agree.

{¶ 56} "Unlike the sufficiency-of-the-evidence standard of review," which addresses the state's burden of production, "'a manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion.'" *State v. Casey*, 2024-Ohio-689, ¶ 10 (12th Dist.), quoting *State v. Messenger*, 2022-Ohio-4562, ¶ 26. "To determine whether a conviction is against the manifest weight of the evidence, this court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Lewis*, 2020-Ohio-3762, ¶ 18 (12th Dist.), citing *State v. Wilks*, 2018-Ohio-1562, ¶ 168. But, even then, a determination regarding the witnesses' credibility is primarily for the trier of fact to decide. *State v. Baker*, 2020-Ohio-2882, ¶ 30 (12th Dist.), citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Therefore, given that it is primarily the trier of fact who decides witness credibility, this court will overturn a conviction on manifest-weight grounds "only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *State v. Kaufhold*, 2020-Ohio-3835, ¶ 10 (12th Dist.).

{¶ 57} For the reasons set forth above in discussing Curtis' first assignment of error, I would also find Curtis' conviction to be against the manifest weight of the evidence. This includes, most notably, my finding that by Curtis simply stating, "I'd like to get that pussy," after the ten-year-old A.B. walked past him was not, as a matter of law, Curtis soliciting A.B. to engage in sexual activity with him. Therefore, having found that the evidence was insufficient to support Curtis' conviction, I necessarily find the trial court's

verdict was also contrary to the manifest weight of the evidence. This is because, "[w]here there is insufficient evidence to support a conviction, it will also necessarily be against the manifest weight of the evidence." *State v. Short*, 2017-Ohio-7200, ¶ 22 (2d Dist.); *see, e.g., State v. Spicer*, 1991 Ohio App. LEXIS 4067, *7 (12th Dist.) (finding that because "the evidence was insufficient to support a conviction for the offenses, we necessarily find that the verdict of the trial court was also contrary to the manifest weight of the evidence"). Accordingly, because I believe Curtis' conviction was not only unsupported by sufficient evidence but also against the manifest weight of the evidence, I would likewise sustain Curtis' second assignment of error.

## Conclusion

{¶ 58} For the reasons outlined above, and because I would sustain both Curtis' first and second assignments of error, I find myself at odds with the majority opinion and respectfully dissent.